**The below described is SIGNED.**

**Dated: March 15, 2013**



**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**



## UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>C.W. MINING COMPANY, dba Co-Op Mining Company,<br><br>Debtor,<br><br>KENNETH RUSHTON, TRUSTEE,<br><br>Trustee,<br><br>vs.<br><br>SMC ELECTRICAL PRODUCTS, INC.; and BECKER MINING AMERICAN, INC.,<br><br>Defendants. | Bankruptcy Case No. 08-20105<br>(Chapter 7)<br><br><br>**FINDINGS OF FACT, CONCLUSIONS OF LAW REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br><br>Adversary Proceeding No. 10-02758 |

      This matter came before the Court at a hearing on February 13, 2013, on defendants SMC Electrical Products, Inc. ("SMC") and Becker Mining America, Inc. ("Becker") (collectively "Defendants") Motion for Summary Judgment.  The Trustee was represented by Michael Zundel and Callie Buys of Prince Yeates & Geldzahler, and Defendants were represented by Jeffrey L. Shields and Jacob D. Lyons of Callister Nebeker & McCullough.  Based on the evidence

presented at the hearing, and the arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT[1]

1. On March 24, 2011, the Trustee filed his Second Amended Complaint in this matter.

2. The Second Amended Complaint seeks relief under Sections 547 and 548 of the Bankruptcy Code.

3. The only transfer identified in the Second Amended Complaint is a $200,000.00 wire transfer from C.W. Mining Company, dba Co-Op Mining Company (the "Debtor") to SMC on October 16, 2007 (the "Transfer").

4. The Transfer was the result of the Debtor's purchase of a longwall electrical system ("Longwall") from SMC.

5. SMC did not have a relationship with the Debtor, or any of its affiliated entities, prior to April 2007.

6. In June 2007, SMC and the Debtor agreed that SMC would provide the Debtor equipment, service, and training for a Longwall.

7. Longwall electrical controls, service, and training are within the normal scope of products and services which SMC provides.

---

[1] Findings of Fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate, see Fed. R. Bankr. P. 7052.

8. On July 9, 2007, SMC provided the Debtor with a quotation for the Longwall ("Quotation 70312.3") that reflected the agreement entered into between SMC and the Debtor in June 2007.

9. Quotation 70312.3 did not specify particular due dates for payments to be made by the Debtor, but did provide that additional charges could be applied to any amount not paid within thirty days of the date of invoice.

10. Quotation 70312.3 required progress payments as follows: 15% due within seven days, 25% due upon issuance of submittals, 25% due upon release of manufacturing, 25% due upon completion of testing, and 10% due upon completion of commissioning.

11. The total system price in Quotation 70312.3 was subsequently modified by Quotation 70312.4 dated October 4, 2007. However, Quotation 70312.4 did not modify the terms of payment in Quotation 70312.3.

12. The payment terms between SMC and the Debtor were typical of SMC's progress payment terms with its other customers at that time which allowed SMC to apply additional charges to amounts not paid within thirty days of their invoice date. This sort of "pay as you go" or progress payment schedule was typical for longwall purchases at this time.

13. On September 18, 2007, SMC issued an invoice to the Debtor for the majority of the equipment and services it had provided or was to provide to the Debtor, in the total amount of $805,539.75 ("September 18, 2007, Invoice").

14. The September 18, 2007, Invoice, as well as the other invoices SMC provided to the Debtor, indicated the terms of payment as "special" to reflect the fact that the Debtor was to make progress payments as it received invoices from SMC.

15. For clients making progress payments, SMC prepared and maintained two different sets of invoices, one internal and one external. The internal invoices were used for internal accounting purposes only and were not typically issued to a client.

16. Because the internal invoices were used for internal accounting purposes only, the existence of the internal invoices is not relevant to the issue before the Court.

17. On October 16, 2007, the Debtor made payment, by wire transfer, in the amount of $200,000.00 on the September 18, 2007, Invoice.

18. The Transfer was one of five wire transfer payments applied to the September 18, 2007, Invoice between September 27, 2007, and October 23, 2007.

19. The Transfer was made twenty-eight days after the September 18, 2007, Invoice was issued. In SMC's experience, payment within such a time frame was typical for SMC customers.

20. Other than the original agreement with the Debtor, SMC did not provide any instructions on how or when the Debtor was to make payments, nor did SMC make any demands upon the Debtor of any kind related to payment.

21.  Other than while negotiating the terms of its agreement with the Debtor, SMC did not direct the Debtor, its representatives, or its affiliates, regarding the form, manner, or time of any payment received from the Debtor, including the Transfer.

22.  SMC did not instruct or request that any payment, including the Transfer, be made by wire transfer, and did not direct the Debtor regarding whether payment should be made in cash, by check, by wire transfer, or in some other manner.

23.  SMC is not aware of why or how the Debtor's decisions on the manner, form, and timing of its payments to SMC, including the Transfer, were made.

24.  It is not unusual for SMC's customers to make multiple payments on a single invoice, particularly when an invoice is over $250,000.00.

25.  Other than the terms of the contract between SMC and the Debtor, SMC was not aware of why or how the Debtor decided to make multiple payments on the September 18, 2007, Invoice.

26.  It is not unusual for SMC to receive payment from entities affiliated with or directed by its customers.

27.  Other than the terms of the contract between SMC and the Debtor, SMC had no knowledge of why or how the Debtor decided to have payments made to SMC from multiple entities.

28.  Early payment is not inconsistent with the agreement between SMC and the Debtor.

29. Partial payment is not inconsistent with the agreement between SMC and the Debtor.

30. The Transfer was made in accordance with the agreement between the Debtor and SMC.

31. SMC did not engage in coercive collection activity with regard to the Transfer.

## CONCLUSIONS OF LAW

Based upon the foregoing Findings of Fact, further findings by the Court on the record, and having reviewed the points and authorities recited by the parties, the Court hereby makes the following Conclusions of Law:

1. For purposes of this Motion, the Court assumes that the Transfer meets the prima facie standard of a payment otherwise avoidable as a preference under Section 547 of the Bankruptcy Code.

2. SMC moved for summary judgment and has met its burden under Section 547(c)(2)(A) of the Bankruptcy Code.

3. Defenses under 547(c)(2)(A) should be narrowly construed. *In re M&L Business Machine Company, Inc.*, 84 F.3d 330 (10th Cir. 1996).

4. In asserting the ordinary course of business defense, the creditor has the burden of proving that payments were made pursuant to ordinary business terms. *In re Meredith Hoffman Partners*, 12 F.3d 549 (10th Cir. 1993).

5. A determination that the transfers were made in the ordinary course of business or financial affairs is a question of fact. *In re M&L Business Machine Company, Inc.*, 84 F.3d 330 (10th Cir. 1996).

6. Under Section 547(c)(2) a creditor must prove that the transfer was in payment of a debt incurred in the ordinary course of business and either that the transfer was made in the ordinary course of business of the debtor and the transferee or that the transfer was made according to ordinary business terms.

7. The policy behind the ordinary course of business defense is to leave normal business practices between two parties undisturbed. What is normal between the two parties is what controls, not necessarily the printed words of an invoice. If there are no prior transactions between the parties, the Court should generally look to see whether the debtor adhered to the contract payment terms. *In re Tulsa Litho Company*, 229 BR 806 (B.A.P. 10th Cir. 1999).

8. Under present law, the ordinary course of business defense in section 547(c)(2)(A) allows a creditor to establish that the disputed payment was ordinary under a subjective test as between the parties. The subjective analysis typically involves comparing preference period transactions with the parties' previous transactions with respect to four primary factors: (1) length of time the parties were engaged in a transaction; (2) whether the amount or form of tender differed from past practices; (3) whether the debtor and creditor engaged in any unusual collection or payment activity; and (4) the circumstances under which the payment was made. *In re Milk Palace Dairy, LLC*, 385 B.R. 765, 769 (B.A.P. 10th Cir. 2008).

9. Taking into consideration the four factors outlined in *Milk Palace Dairy, LLC*, the Court finds that there is no material dispute and the parties agree that the Debtor and SMC had no previous trade practice to rely upon or to examine in determining a course of dealing.

10. There is no material dispute, and the Court concludes, that the transactions between the Debtor and SMC did not involve any unusual collection efforts or coercion.

11. The Court concludes that the Transfer was in payment of a debt incurred by the Debtor in the ordinary course of business or financial affairs of the Debtor.

12. A debtor's acquisition of assets that are consistent with, and in support of, the debtor's business is ordinary.

13. The Debtor is a mining company and its acquisition of the Longwall was in the ordinary course of its business.

14. The court concludes that the debt incurred by the Debtor to purchase the Longwall from SMC was a debt incurred in the ordinary course of SMC and the Debtor's business under Section 547(c)(2).

15. The mere fact that a payment is made early or is a partial payment does not establish that the payment was not made in the ordinary course of business of the debtor and the transferee.

16. Although there may be instances were additional factors establish that a payment that was made early, or that was a partial payment, was not made in the ordinary course of

business of the debtor and the transferee, the Trustee has failed to establish, or even allege, that such factors exist in this case.

17.     The court concludes that the Transfer was a payment made in the ordinary course of business or financial affairs of the Debtor and SMC.

## CONCLUSIONS

Based upon the foregoing Findings of Fact and Conclusions of Law, SMC's motion for Summary judgment will be granted.

----------------------------------------END OF DOCUMENT--------------------------------------------

## DESIGNATION OF PARTIES TO BE SERVED

This is to certify that a true copy of the foregoing **FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** will be effected through the Bankruptcy Noticing Center to the following:

Callie Buys    cb@princeyeates.com,

docket@princeyeates.com;asa@princeyeates.com;janice@princeyeates.com

Jacob D. Lyons    jlyons@cnmlaw.com, nopenshaw@cnmlaw.com

Jeffrey L. Shields    jlshields@cnmlaw.com, njpotter@cnmlaw.com

Michael N. Zundel    mnz@princeyeates.com,

janice@princeyeates.com;recep@princeyeates.com;docket@princeyeates.com;los@princeyeates.com;dcd@princeyeates.com;kathleen@princeyeates.com;